**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3440-17T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

   v.

JEFFREY PROFITT,

      Defendant-Respondent.

_____

Argued May 30, 2018 — Decided June 26, 2018

Before Judges Fisher and Moynihan.

On appeal from Superior Court of New Jersey,
Law Division, Cumberland County, Indictment
No. 17-02-0118.

Harold B. Shapiro, First Assistant Prosecutor,
argued the cause for appellant (Jennifer Webb-
McRae, Cumberland County Prosecutor,
attorney; Harold B. Shapiro, and Andre R.
Araujo, Assistant Prosecutor, of counsel and
on the brief).

Michael L. Testa argued the cause for
respondent (Testa Heck Testa & White, PA,
attorneys; Michael L. Testa, on the brief).

PER CURIAM

We granted the State's motion for leave to appeal an interlocutory order that severed a single count of engaging in a pattern of official misconduct, N.J.S.A. 2C:30-7, from an indictment's other seven counts, which focused on the defendant police officer's actions during and after his arrest of A.W. in Millville in April 2016.[1] The decision to sever was based on a determination that N.J.R.E. 404(b) did not permit the admission of evidence of an alleged pattern relevant to the eighth count — a series of alleged similar bad conduct on earlier occasions — in a trial on the seven A.W. counts. The judge made this determination by assuming that, even if the first three prongs of the Cofield test[2] could be met, the probative value of the prior bad-act evidence was outweighed by its prejudicial impact. We find the

---

[1] Those seven counts are: second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7); two counts of third-degree tampering with public records, N.J.S.A. 2C:28-7(a)(2), (3); fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1); fourth-degree obstructing the administration of law or other governmental function, N.J.S.A. 2C:29-1(a); and second-degree official misconduct, N.J.S.A. 2C:30-2(a).

[2] State v. Cofield, 127 N.J. 328, 338 (1992) (recognizing four prongs to the admission of N.J.R.E. 404(b) evidence: (1) the "evidence of the other crime must be admissible as relevant to a material issue," (2) "must be similar in kind and reasonably close in time to the offense charged," (3) the other-crime evidence "must be clear and convincing," and (4) "[t]he probative value of the evidence must not be outweighed by its apparent prejudice"). Cofield's temporal requirement is "not universally required." State v. Rose, 206 N.J. 141, 163 (2011).

judge's ruling to be premature; he could not have ascertained or appreciated the evidence's probative value without having it adduced and considered at an evidentiary hearing. Accordingly, we vacate the severance order and remand for further proceedings in conformity with this decision.

As mentioned, defendant is a police officer. The State alleges that defendant was dispatched to respond to a 9-1-1 call at a Millville liquor store. Upon arrival, he found A.W. was belligerent and "causing public alarm." Defendant arrested A.W. and transported him to the Millville police station. He also summoned medical personnel because of A.W.'s level of apparent intoxication.

While in the police department garage, defendant "took [A.W.] to the ground," causing A.W. to suffer "several facial fractures" when his head struck the concrete floor. The emergency medical technicians summoned by defendant arrived in time to witness this encounter. They provided testimony to the grand jury that defendant picked A.W. up off the floor and forcefully brought him into contact with the ground. A.W.'s face, according to one of the EMT witnesses, hit the concrete floor like "a pumpkin smashing."[3]

---

[3] A.W. was taken to a local hospital and underwent three hours of surgery to repair the fractures to the nasal bone, zygomatic arch and maxillary sinus.

The State claims defendant misled a superior officer when reporting the extent of A.W.'s injuries; defendant told a lieutenant only that there was a "little bit of blood from a nose bleed," leading the lieutenant to call for maintenance to clean up the area rather than initiate an investigation. It wasn't until a few hours later that the lieutenant learned of the seriousness of A.W.'s injuries; that finally prompted an internal investigation and notice to the prosecutor's office. By that time, the pool of blood in the parking garage was gone and the scene could no longer be adequately documented; that time interval also gave defendant an opportunity to launder his uniform.

In addition to these allegations, the State contends that defendant failed to properly report the incident. The State claims, among other things, discrepancies between defendant's reports — both in terms of timing and subject matter — as well as his failure to follow proper procedures for intoxicated arrestees and for documenting the altercation. According to the State, defendant failed to complete an Attorney General use-of-force report and falsely claimed the use of force occurred earlier at the liquor store instead of the parking garage, as witnessed by the EMT workers.

The State's evidence of prior bad acts concerned eleven other arrests made by defendant within the preceding three years. In its

motion for leave to appeal, the State emphasized three of these prior arrests. The State claims that, on October 8, 2014 — eighteen months prior to A.W.'s arrest — defendant arrested W.H., whose arrest photo depicted facial swelling, bruising, and copious blood around his nose and forehead. An investigation revealed that, like A.W., defendant "took [W.H.] to the ground." Defendant's report at the time did not document any injuries despite W.H.'s notable appearance in an arrest photo. On May 27, 2015 — eleven months before A.W.'s arrest — defendant arrested L.S. and, according to an investigation, grabbed L.S. "by his hair," took him "to the ground," and struck him "in the face several times with a closed fist." The injuries suffered by L.S. were not documented in any arrest report despite the fact that the arrest photo, as was the case with W.H., revealed facial swelling, bruising, and copious blood around L.S.'s nose and mouth. And, on June 15, 2015 — ten months prior to A.W.'s arrest — K.H. was arrested and, according to an investigation, defendant struck K.H. when he attempted to pull away. An arrest photo revealed no facial injury, but a photo taken after K.H. was released from the hospital showed an injury to the back of his head that was allegedly caused when defendant struck him with an unspecified weapon.

Defendant was indicted in February 2017. He moved to dismiss or, in the alternative, to sever the pattern-of-official-

misconduct count from the seven A.W. counts. The judge did not dismiss, but he separated the eighth count from the other seven. In severing, the judge recognized that any evidence concerning arrests made and reports filed prior to A.W.'s arrest — although likely intrinsic to the eighth count — was not intrinsic to the seven A.W. counts. Without conducting a hearing, and having before him only a transcript of the grand jury testimony, the judge assumed that evidence of the alleged prior bad acts was clear and convincing and that all other Cofield prongs justified admission,[4] but he concluded, on the fourth prong, that the evidence would be too prejudicial if admitted during a trial on the seven A.W. counts. He determined that severance was necessary because he could not conceive of a jury instruction that might successfully persuade a jury to confining its use of that evidence to the eighth count. The judge similarly amplified on this determination when denying the State's later reconsideration motion, although the judge also concluded that the right to seek reconsideration of an interlocutory order is not permitted by the rules governing criminal proceedings; in other words, the judge doubted the right

---

[4] The judge made some comments that suggested he believed some or all of the alleged prior bad acts were too remote in time. Notwithstanding, it appears that the judge ultimately assumed that the first three Cofield prongs permitted admission, and we review the orders in question on that assumption.

to reconsider but nevertheless considered the State's arguments and reached the same conclusion.

The State promptly moved for leave to appeal. We granted the motion to consider the State's arguments that: (1) a party to a criminal proceeding may request trial-court reconsideration of an interlocutory order; (2) the judge erred in concluding that the evidence relating to alleged bad acts prior to A.W.'s arrest was inadmissible on the seven A.W. counts; and (3) double-jeopardy principles and judicial economy require a single trial on all eight counts. We briefly dispense with the first and third issues.

As to the first, we agree with the State that the Court Rules do not bar reconsideration motions in criminal matters. To be sure, the Rules make no mention, but our Supreme Court has emphatically recognized the availability of this procedure, expressing in State v. Timmendequas, 161 N.J. 515, 554 (1999), that it had "never questioned the appropriateness of interlocutory motions to reconsider in criminal matters." See also State v. Puryear, 441 N.J. Super. 280, 294-95 (App. Div. 2015). And, as to the third, while we leave matters of judicial economy to the trial court's sound discretion, we do not share the State's concern about the applicability of double-jeopardy principles. Defendant requested severance and, consequently, he will not be heard to complain if, at the end of the day, he is required to face separate

A-3440-17T4

trials. See State v. Chenique-Puey, 145 N.J. 334, 344 (1996). Indeed, defendant expressly acknowledges that double jeopardy has no application because it is he who requested and obtained the severance order.

With that, we turn to the critical second issue: did the judge correctly determine that, even though the alleged prior bad acts are likely admissible as to the pattern-of-official-misconduct count, the evidence is inadmissible as to the seven A.W. counts? Although the orders under review concern the direction that the eighth count be severed from the remainder, the real issue concerns whether the judge properly determined that N.J.R.E. 404(b) requires exclusion of this evidence in a trial on the A.W. counts.[5]

In considering this issue, we discern from the judge's oral decisions that he assumed the State would be able to show that evidence of eleven prior arrests meets the first three prongs of the Cofield test, i.e., that the evidence is "relevant to a material issue" that is "genuinely disputed," that the evidence

---

[5] That is, even though we granted leave to appeal to review orders granting severance and denying reconsideration, we have actually been asked to examine whether the judge properly excluded prior-bad-act evidence from a trial on the seven A.W. counts. We conclude that if, as the judge held, this prior-bad-act evidence was properly excludable from a trial on the A.W. counts, then the judge acted well within his sound discretion by ordering severance.

is "similar in kind and reasonably close in time to the offense charged," and that there is "clear and convincing" evidence that the prior bad acts occurred.[6] Cofield, 127 N.J. at 338. Instead, the judge focused on what he believed was the State's inability to demonstrate the fourth prong, which insists that "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Ibid.

In determining the judge prematurely concluded that Cofield's fourth prong required exclusion, we observe that we have been presented with no clear revelation about the prior events — other than the conclusions urged by the State — nor are we able to gather a sense of its "probative value." Our Supreme Court has recognized that evidence has probative value when it relates to a genuine issue — that it not just have "logical relevance or persuasiveness" but relates to a fact in issue. State v. Stevens, 115 N.J. 289, 301 (1989). The fourth Cofield prong also requires that the judge ascertain the weight of the evidence about the prior acts. This incorporates a number of sub-issues. For example, in State v. Ramseur, 106 N.J. 123, 265-66 (1987), the Court recognized that

---

[6] We should emphasize that the judge only assumed for purposes of the severance argument that these prongs supported admission of prior-bad-act evidence. Because we remand for further proceedings on the admission of this evidence in a trial on the first seven counts, defendant remains free to argue that these other prongs cannot be satisfied.

"temporal remoteness of a past wrong affects its probative value." In that sense, after hearing the evidence, the judge may very well conclude that an alleged bad act that occurred three years prior may have less probative value than an alleged bad act that occurred six months before. On the other hand, a three-year-old event might be far more similar to the A.W. incident and possess far more probative weight than a more recent but less similar event. This warrants closer examination than has yet occurred in the trial court.

Not to be overlooked is the fact that the alleged prior bad acts are multi-faceted, as are the charges relating to the A.W. arrest. That is, the State is not only arguing — we assume — that the prior alleged assaults of arrestees may relate to an issue regarding the alleged assault of A.W., but also that the prior alleged cover-ups or concealments are germane to the alleged cover-up or concealment of defendant's alleged assault of A.W. It is entirely possible that a judge might conclude in such a situation that it is simply not an all-or-nothing situation with this purported N.J.R.E. 404(b) evidence; some but not all of the prior alleged bad acts may be admissible as to some but not all of the first seven counts. This, too, requires closer examination of the particular facts that the State seeks to adduce.

10

We conclude that these issues, and others suggested by the record, have not been sufficiently aired to allow for any safe conclusion about the probative value of the alleged prior bad acts and their weight when compared to any resulting prejudicial effect. These complications would best be resolved, first, by following the process suggested in State v. Fortin, 318 N.J. Super. 577, 598-99 (App. Div. 1999), aff'd, 162 N.J. 517 (2000), with counsel either conferring with each other, or presenting to the judge, or both, and with specificity, the facts the State seeks to present about these alleged prior bad acts and the relationship of that prior conduct to an issue or issues genuinely in dispute in one or more of the seven A.W. counts. Once the issues are narrowed and the disputed evidence heard, the judge should then determine, through the application of all four Cofield factors, whether any or all of this prior conduct is admissible as to any or all of the A.W. counts, with particular attention paid to the fourth prong's proposition that — to be admissible — the probative value of any such evidence must outweigh its prejudicial effect.

We could go on in this vein, but, rather than attempt to catalog all other potential problems, we will simply remand the matter for the judge's renewed and thorough examination of the problem. In short, having briefly intervened at this interlocutory stage, we deem it best not to further detain the adjudication of

11

these and all other issues. We remand for the judge's examination of these concepts and his findings as to the value of the prior-bad-act evidence and its relationship, or lack thereof, to some or all of the seven A.W. counts at an evidentiary hearing as described in N.J.R.E. 104(a). State v. Hernandez, 170 N.J. 106, 127 (2001); see also State v. Lykes, 192 N.J. 519, 540-41 (2007) (Albin, J., dissenting) (reiterating that our courts are required "to adhere to strict standards before admitting such evidence and, typically, to conduct a N.J.R.E. 104 hearing outside the presence of the jury" when determining the admissibility of N.J.R.E. 404(b) evidence).

To conclude, the orders under review are vacated and the matter remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION